**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | | |
|---|---|---|
| **TONI MARIA NELSON,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**FRANK J. BISIGNANO,**<br>**Commissioner of Social Security,**<br><br>**Defendant.** | ) | **NO. 5:26-CV-00032-MAS** |

## MEMORANDUM OPINION & ORDER

Plaintiff Toni Maria Nelson ("Nelson") appeals the Commissioner's denial of Supplemental Security Income under Title XVI of the Social Security Act. The Court addresses the parties' competing briefs on the matter. [DE 8, 10, 11]. This matter is fully ripe for review.

## I. FACTUAL AND PROCEDURAL HISTORY

Nelson protectively filed an application for Supplemental Security Income ("SSI") on December 27, 2023, alleging disability beginning December 15, 2023. [TR at 15, 74-75].[1] She claimed disability due to epilepsy, an anxiety disorder, and a heart problem. [TR at 258]. The claim was denied initially on August 26, 2024, and upon reconsideration on November 21, 2024. [TR at 15]. Administrative Law Judge

[1] The Administrative Transcript is docketed at DE 7. The Court shall utilize the pagination generated by the Commissioner when referencing the Transcript.

("ALJ") Jerry Lovitt held a hearing on April 3, 2025, at which Nelson and an impartial Vocational Expert ("VE") testified. [TR at 15, 40-64]. On April 22, 2025, the ALJ issued a decision finding that Nelson was not disabled. [TR at 15-30]. The Appeals Council denied review on November 28, 2025, making the ALJ's decision the final decision of the Commissioner. [TR at 1-6]. Nelson then filed this action. [DE 1].

Nelson was forty-two years old on the date she filed her application, which places her in the "younger individual" category. She has at least a high school education. [TR at 28]. She has no past relevant work. [*Id.*].

The ALJ followed the five-step sequential analysis. At Step One, he found that Nelson had not engaged in substantial gainful activity since her application date. [TR at 17]. At Step Two, he found that she suffers from the severe impairments of "seizure disorder, anxiety, and depressive disorders," and that her heart condition and headaches are not severe. [TR at 17-18]. At Step Three, he considered Listings 11.02, 12.04, and 12.06 and found that Nelson's impairments neither meet nor medically equal any listing. [TR at 19-21]. In applying the "paragraph B" criteria, he found Nelson mildly limited in understanding, remembering, or applying information and in interacting with others. [TR at 20]. Moreover, he found her moderately limited in concentrating, persisting, or maintaining pace and in adapting or managing oneself. [*Id.*]. The ALJ then found that Nelson has the residual functional capacity ("RFC") to perform:

> medium work as defined in 20 CFR 416.967(c) and *the Dictionary of Occupational Titles*, except with the following limitations: no crawling; no climbing of ladders, ropes, or scaffolds; no unprotected heights; and no more than occasional exposure to vibrations; and no exposure to

> workplace hazards such as dangerous machinery with moving parts that fail to stop when human contact is lost; no driving as part of the job; no operation of heavy machinery or drivable workplace equipment such as a forklift or side-loader; and who is able to understand, remember, and carry out simple, routine instructions; and who is able to sustain concentration completing simple, repetitive, routine tasks; and can use judgment in making simple work-related decisions consistent with this type of work; and requires an occupation with an established and predictable routine, and with familiar procedures in place; and can occasionally deal with changes in a routine work setting; and with no manufacturing sector fast-paced production line, quota based tandem tasks, or production pace assembly line work.

[TR at 22]. At Step Four, the ALJ found that Nelson has no past relevant work. [TR at 28]. At Step Five, relying on the VE's testimony, he found that Nelson could perform jobs existing in significant numbers in the national economy, including janitor, cylinder checker, and hand packager. [TR at 29; *see* TR at 60-62]. The ALJ concluded that Nelson has not been disabled since December 27, 2023. [TR at 30].

## II. <u>LEGAL FRAMEWORK</u>

Judicial review of the ALJ's decision is deferential and strictly limited. The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also*

42 U.S.C. §§ 405(g), 1383(c)(3).[2] Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court makes its substantial evidence determination based on the record as a whole, *Cutlip*, 25 F.3d at 286, but it need not comb the record for facts supporting under-developed arguments. [*See* General Order No. 13-7 (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006))]. Nor may the Court "try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm an ALJ decision supported by substantial evidence, even if substantial evidence might also support the opposite conclusion and even if the Court itself might have reached a

[2] The legal standard for SSI claims mirrors the standard for Disability Insurance Benefits ("DIB") claims. *See Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at *3 (6th Cir. 1991) (table). "The standard for disability under both the DIB and SSI programs is virtually identical." *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013), report and recommendation adopted, 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at *4 (E.D. Ky. Feb. 3, 2010)(applying the same legal standards and evaluation process for SSI and DIB). The Court cites DIB and SSI case law interchangeably, mindful of the regulations pertinent to each type of claim.

different result. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

For context, the Court briefly outlines the ALJ's five-step sequential analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 416.920(a)(4). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments. Id. § 416.920(a)(4)(ii). In the third step, the ALJ decides whether such impairments, either individually or collectively, meet an entry in the Listing of Impairments. *Id.* § 416.920(a)(4)(iii). In the fourth step, the ALJ determines the claimant's RFC and assesses whether the claimant can perform past relevant work. *Id.* § 416.920(a)(4)(iv). Finally, in the fifth step, the burden shifts to the Commissioner, and the ALJ must decide whether there are jobs that exist in significant numbers in the national economy that the claimant could perform based on RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends there. *Id.* § 416.920(a)(4).

## III. ANALYSIS

On appeal, Nelson raises five claims of error. First, she argues that the ALJ failed to properly evaluate the opinion of psychological consultative examiner, Cristi Hundley, Ph.D. [DE 8, Page ID# 918]. Second, she contends that the ALJ failed to properly evaluate the findings of the state agency psychological consultants, Dan Vandivier, Ph.D., and Alicia Fedewa, Ph.D. [*Id.*]. Third, she argues that the ALJ failed to properly evaluate the opinion of internal medicine consultative examiner,

Jonelle DeLawrence, M.D. [*Id.*]. Fourth, she asserts that the ALJ failed to evaluate the opinion of her therapist, Jessica Cox, Licensed Clinical Social Worker ("LCSW"). [*Id.*]. Finally, she argues that the ALJ erred at Step Three by failing to consider whether her impairments met Listing 2.02. [*Id.*].

The Court reviews these arguments in the order of sequential analysis, beginning with Step Three (argument five) and then turning to the ALJ's RFC assessment (arguments one through four). Nelson's first, second, and fourth arguments rest on a single premise: that the RFC should have included a limitation on her ability to interact with others. Thus, the Court addresses those arguments together before turning to Dr. DeLawrence's opinion, the third argument.

### A. STEP THREE: LISTING 2.02

At Step Three, the claimant bears the burden of establishing that her impairments meet or medically equal the criteria of a listed impairment. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). She must present "specific medical evidence to satisfy all of the criteria" of the listing. *Perschka v. Comm'r of Soc. Sec.*, 411 F. App'x 781, 786 (6th Cir. 2010). The ALJ, in turn, must "actually evaluate the evidence, compare it to [the relevant] Listing, and give an explained conclusion." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). However, that duty does not reach every listing. The ALJ should discuss a listing when the record "raise[s] a substantial question as to whether [the claimant] could qualify as disabled" under it. *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013) (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). To raise a substantial question, the claimant must "point to specific evidence that demonstrates [she] reasonably

could meet or equal every requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014). Absent that showing, the ALJ does not commit reversible error by not addressing the listing. *Id.* at 432–33.

Here, the ALJ evaluated Nelson's impairments under Listings 11.02, 12.04, and 12.06. [TR at 19–21]. He did not address Listing 2.02, which is met when the "[r]emaining vision in the better eye after best correction is 20/200 or less." 20 C.F.R. pt. 404, subpt. P, app. 1, § 2.02. Nelson argues that the omission requires remand because, at her May 16, 2024 consultative examination, Dr. DeLawrence recorded visual acuity of 20/200+ in the right eye and 20/200 in the left. [DE 8, Page ID# 930; TR at 777-78].

That reading does not raise a substantial question. The listing measures vision "after best correction," and Dr. DeLawrence's reading was not a corrected one. Nelson told Dr. DeLawrence that she needed glasses, and she did not have corrective lenses with her at the examination. [TR at 778]. Both state agency medical consultants reviewed the examination and described the reading as "[u]ncorrected." [TR at 70, 83]. At reconsideration, Douglas Back, M.D., an ophthalmologist, added that Nelson's glasses correct nearsightedness and that her "issue with vision is really only related to not having new glasses." [TR at 83].

Nelson's own account is the same. In an October 2024 vision questionnaire, she reported that she wears glasses, can read print while wearing them, has no difficulty getting around while wearing them, and has not changed or stopped any activity because of her vision. [TR at 296–97]. And a January 2024 neurological

examination found her visual acuity "grossly normal." [TR at 851]. Nelson points to no evidence that her best-corrected acuity in either eye was 20/200 or less.

Nor did Nelson develop any claim of disabling vision loss before the agency. She did not list a visual impairment among the conditions limiting her ability to work [TR at 258], and she stated in her application that she is not blind [TR at 218]. Although her function report noted that light bothers her eyes [TR at 274–75], she offered no testimony about her vision at the hearing [TR at 40–64], and her brief to the Appeals Council did not mention it [TR at 354–56].

In reply, Nelson contends that the Commissioner's arguments are *post hoc* rationalizations because Step Three findings belong to the ALJ, not to the Commissioner's counsel. [DE 11, Page ID# 955–56]. But the Court makes no Step Three finding of its own. The Court's responsibility is simply whether the record required the ALJ to discuss Listing 2.02 at all. *See Sheeks*, 544 F. App'x at 641; *Smith-Johnson*, 579 F. App'x at 432–33. It does not. Because the record raised no substantial question that Nelson met Listing 2.02, the ALJ did not err by not addressing it.

### B. RFC: EVALUATING THE MEDICAL OPINIONS

The RFC represents the most a claimant can still do despite her limitations. 20 C.F.R. § 416.945(a)(1). The ALJ must assess it "based on all of the relevant medical and other evidence," and the assessment "must include a narrative discussion describing how the evidence supports each conclusion." *Id.* § 416.945(a)(3); SSR 96-8p, 1996 WL 374184 (July 2, 1996). The RFC determination belongs to the ALJ alone. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

Here, the ALJ limited Nelson to a reduced range of medium work with environmental, postural, and mental restrictions, but no restriction on her interaction with others. [TR at 22]. Nelson's remaining four arguments challenge how the ALJ evaluated the medical evidence underlying that finding. [TR at 25–26].

### 1. <u>Legal Standard</u>

Because Nelson filed her claim after March 27, 2017, 20 C.F.R. § 416.920c governs the ALJ's evaluation of the medical opinions[3] and prior administrative medical findings. Under that regulation, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(a). Instead, the ALJ "will articulate in [his] determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings" in the record. *Id.* § 416.920c(b). Of the five factors the ALJ considers, supportability and consistency are the most important, and the ALJ must explain how he considered both. *Id.* § 416.920c(b)(2), (c)(1)-(5). Supportability asks how well "the objective medical evidence and supporting explanations presented by a medical source" support the opinion. *Id.* § 416.920c(c)(1). Consistency asks how well the opinion

[3] A "medical opinion" is "a statement from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental, and other demands of work and to adapt to environmental conditions. 20 C.F.R. § 416.913(a)(2). Findings by state agency consultants about a claimant's impairments, functional limitations, and other medical issues are "prior administrative medical findings." *Id.* § 416.913(a)(5).

agrees "with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 416.920c(c)(2).

A finding that an opinion is persuasive does not require the ALJ to adopt it wholesale. "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinion verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015); *see also Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) ("No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding."). But "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7.

To the extent a claimant contends that a medical opinion is in fact consistent with and supported by the record, "[t]his is a substantial evidence argument, not an argument that the ALJ did not follow social security regulations." *Eckert v. O'Malley*, No. 5:22-CV-00316-MAS, 2024 WL 841765, at *3 (E.D. Ky. Feb. 28, 2024). On that question, the Court will not accept a "veiled attempt to have [it] reweigh the evidence." *Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *2 (6th Cir. Dec. 1, 2022). Whether the ALJ adequately articulated his reasoning, however, is a question of compliance with the regulations. "[T]he measuring stick for an 'adequate discussion' is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of his finding as to whether the particular

medical opinion was supported by substantial evidence." *Terhune v. Kijakazi*, No. 3:21-CV-37-KKC, 2022 WL 2910002, at *3 (E.D. Ky. July 22, 2022).

An articulation error requires remand unless it is harmless, because "substantial evidence alone does not excuse non-compliance with [the regulations] as harmless error." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 410 (6th Cir. 2009). Such an error is harmless if "(1) the medical opinion is patently deficient, (2) the ALJ adopted the medical opinion or made findings consistent with the opinion, or (3) the goal of the regulation was otherwise met." *Lorraine R. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00396, 2022 WL 4232839, at *5 (S.D. Ohio Sept. 14, 2022) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

**2. The Social Interaction Limitation**

Nelson's first, second, and fourth arguments center on the same issue: that the RFC should have restricted her interaction with others. The RFC contains no such restriction. [TR at 22]. At Step Two, the ALJ found that Nelson has only a mild limitation in interacting with others. [TR at 20].

*a. Dr. Hundley*

Cristi M. Hundley, Ph.D., examined Nelson on June 19, 2024. [TR at 786]. She observed that Nelson was "alert, pleasant and cooperative" and that her "mood appeared neutral and anxious." [*Id.*]. Nelson "pressed her palms together frequently" and "looked at the floor for almost the entire evaluation." [*Id.*]. Dr. Hundley opined that Nelson's ability to understand and remember simple instructions was mildly limited and that her ability to maintain attention and concentration was fair. [TR at 789]. She further opined that Nelson's abilities to interact appropriately in a work

setting and to handle the stresses of a work environment were each "moderately to markedly limited." [*Id.*].

The ALJ found the opinion "largely unpersuasive regarding the moderately to marked limitations in the claimant's ability to interact with others and handle stressors." [TR at 26]. He gave several reasons. The opinion "heavily relied on the claimant's self-reporting rather than any objective, clinical evaluation." [*Id.*]. It was inconsistent with the state agency psychologists' findings. [*Id.*]. And it was not supported by the overall record, which showed that Nelson received little or no counseling after December 2023, was cooperative and talkative in her counseling sessions, had normal eye contact and no impairment in cognition, reported a new relationship, and that counseling helped her symptoms. [*Id.*]. The ALJ concluded: "Thus, marked limitations are not supported or consistent with the totality of the evidence." [*Id.*].

Nelson does not dispute the ALJ's reasons or the evidence underlying them. Rather, Nelson reads the ALJ's closing sentence to mean that he rejected only the "marked" end of Dr. Hundley's opinion. That would leave a moderate limitation in interacting with others that the ALJ neither adopted nor explained away. [DE 8, Page ID# 920-22]. She relies on *Kinney v. Comm'r of Soc. Sec.*, No. 23-3889, 2024 WL 2273365, at *3 (6th Cir. May 20, 2024), in which the Sixth Circuit reversed because the ALJ found a state agency psychologist's opinion persuasive but omitted one of its limitations from the RFC without explanation. [DE 8, Page ID# 921–22].

The Commissioner responds that the ALJ rejected Dr. Hundley's assessment of interaction limitations in full and that his decision, read as a whole, makes the reasons plain. [DE 10, Page ID# 938-40].

The Court agrees with the Commissioner. To begin, Nelson's reading isolates the ALJ's last sentence from his first. The ALJ expressly found the opinion unpersuasive as to "the moderately to marked limitations" in interacting with others, not merely the marked ones. [TR at 26]. Dr. Hundley, moreover, did not assess a moderate limitation and a separate marked limitation. She offered a single range: "moderately to markedly limited." [TR at 789]. The ALJ evaluated the **whole** assessment, and he was not required to parse each point within it. *See Ebeling v. Comm'r of Soc. Sec.*, No. 21-CV-00115, 2022 WL 3006209, at *3 (W.D. Ky. July 28, 2022) ("The ALJ is not required to discuss every detail presented in the 'voluminous case records' nor does she need to explain her evaluation of each portion of a medical source's opinion."). For the same reason, *Kinney* does not help Nelson. There, the ALJ found the opinion "persuasive" and recited the very limitation he then omitted. *Kinney*, 2024 WL 2273365, at *2–3. Here, the ALJ found Dr. Hundley's interaction assessment "largely unpersuasive" and explained why. [TR at 26].

The ALJ's explanation also satisfies the regulation. As to supportability, he found that Dr. Hundley relied heavily on Nelson's self-reports rather than on objective clinical findings. [*Id.*]. Reliance on a claimant's subjective complaints rather than objective clinical data is a legitimate reason to discount an opinion. *Pierce v. O'Malley*, No. 5:24-035-DCR, 2024 WL 3541202, at *2 (E.D. Ky. July 25,

2024) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013)); *see also Prather v. Bisignano*, No. 5:25-327-DCR, 2026 WL 1398615, at *3-4 (E.D. Ky. May 19, 2026) (holding that the ALJ sufficiently articulated discounting an expert opinion relying on subjective complaints.). As to consistency, the ALJ compared the opinion to the state agency psychologists' findings and to Nelson's counseling records. [TR at 26]. The record supports that comparison. Nelson's counselor described her in March 2023 as "cooperative friendly and talkative." [TR at 459]. Mental status examinations recorded cooperative behavior, normal eye contact, no thought abnormality, and no cognitive impairment. [*See* TR at 469]. In August 2023, Nelson reported a new relationship and said that therapy had helped her manage her temper. [TR at 479]. She was discharged from counseling on December 31, 2023, for noncompliance after she stopped attending and did not respond to correspondence. [TR at 512].

The ALJ's Step Two finding confirms that he rejected any interaction limitation from Dr. Hundley. Relying on much of the same evidence, he found that Nelson has only a mild limitation in interacting with others, noting that examinations showed her to be "cooperative and engaging, with normal eye contact and speech" and that she presented at the hearing as polite and socially engaging. [TR at 20]. The ALJ was entitled to consider that observation. *Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x 162, 171 (6th Cir. 2016) (an ALJ's observations of a claimant at the hearing are "material, relevant, and admissible" (quoting *Martin v. Sec'y of Health & Human Servs.*, 735 F.2d 1008, 1010 (6th Cir. 1984))). The record supports

this as well. In her function report, Nelson denied problems getting along with family, friends, neighbors, or others, reported that she had never been fired or laid off for problems getting along with others, and stated that she sees her brother once or twice a week. [TR at 274–75]. These are the ALJ's own findings, not the *post hoc* rationalization of counsel that Nelson alleges. [*See* DE 11, Page ID# 951].

Nelson's reply points to the ALJ's statement that Dr. Hundley's opinion was inconsistent with the state agency psychologists, "who found the claimant has no more than moderate limitations." [DE 11, Page ID# 951 (quoting TR at 26)]. In her view, that comparison shows the ALJ accepted moderate limitations. But the sentence explains why the opinion overstated Nelson's limitations; it does not adopt any part of Dr. Hundley's range. Whether the ALJ adequately accounted for the state agency psychologists' own moderate findings is a separate question, raised by Nelson's second argument and addressed below.

Finally, Nelson cites treatment records she believes are consistent with Dr. Hundley's opinion. [DE 8, Page ID# 923]. That some evidence could support a different conclusion does not warrant remand when substantial evidence supports the ALJ's. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996). Nelson's contrary evidence amounts to a "veiled attempt to have [the Court] reweigh the evidence." *Nasser*, 2022 WL 17348838, at *2. The ALJ adequately articulated, and substantial evidence supports, his evaluation of Dr. Hundley's opinion. Because the ALJ did not err, the Court need not reach Nelson's arguments about the hypothetical posed to the VE and SSR 85-15. [DE 8, Page ID# 923–24].

*b.* *The State Agency Psychologists*

Dan K. Vandivier, Ph.D., at the initial level, and Alicia Fedewa, Ph.D., on reconsideration, each found that Nelson had a moderate limitation in interacting with others. [TR at 67, 80]. Each rated her "[m]oderately [l]imited" in the ability to interact appropriately with the general public but not significantly limited in accepting instructions from supervisors or getting along with coworkers. [TR at 71, 84]. Both concluded that Nelson "is able to respond and interact appropriately to supervisors and coworkers with limited exposure to the general public." [TR at 72, 85].

The ALJ described these findings as "largely persuasive." [TR at 25]. He described the psychologists as finding mild limitation in understanding, remembering, or applying information, "but moderate in the other areas of mental functioning." [*Id.*]. Per his opinion, their findings were consistent with Nelson's repeatedly normal mental health assessments. [*Id.*]. The RFC, mirroring these assessments, limits Nelson to simple, routine instructions and tasks, simple work-related decisions, a predictable routine with only occasional changes, and no production-pace work. [TR at 22]. It contains no limitation on contact with the public. [*Id.*].

Nelson argues that the ALJ was required to adopt their public-contact limitation or explain why he did not. [DE 8, Page ID# 925–26 (citing *Kinney*, 2024 WL 2273365, at *4)]. The Commissioner responds that the ALJ found the findings only "largely" persuasive; that his Step Two finding of a mild limitation in interacting with others explains the omission; and that any error was harmless because the jobs

on which the ALJ relied do not require public contact. [DE 10, Page ID# 941–43]. In reply, Nelson calls the Commissioner's reliance on Step Two *post hoc* rationalization and argues that, under SSR 24-3p, only a VE, not counsel's reading of the Dictionary of Occupational Titles ("DOT"), can establish that the jobs involve no public contact. [DE 11, Page ID# 952–53].

An ALJ need not adopt a persuasive opinion wholesale. *Reeves*, 618 F. App'x at 275. But when the RFC conflicts with a medical source's opinion, the ALJ must explain why the opinion was not adopted. *Kinney*, 2024 WL 2273365, at *3 (quoting SSR 96-8p). In *Kinney*, the ALJ found a state agency psychologist's opinion persuasive, recited the limitation at issue, and then omitted it from the RFC without explanation; the Sixth Circuit reversed. *Id.* at *2–4. This case differs from *Kinney* in two respects.

First, the ALJ found the psychologists' findings only "largely" persuasive, signaling that he did not adopt them in full. [TR at 25]. And his decision explains where he parted ways. As already mentioned, he relied on examinations showing that she was "cooperative and engaging, with normal eye contact and speech," her own reports about her relationships, and her presentation at the hearing. [TR at 20]. He then stated that the RFC "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." [TR at 21]. Read together, these findings explain why the RFC omits a social limitation. That reasoning comes from the ALJ, not from counsel.

Second, even if the ALJ should have said more, any error was harmless. The two jobs on which the ALJ relied, and which the Commissioner defends, are cylinder checker (DOT 549.587-010) and hand packager (DOT 920.587-018). [TR at 29, 61].[4] Each carries a DOT "people" rating of 8, the lowest level of interaction. Courts in this Circuit have held that omitting a social limitation is harmless when the jobs identified carry that rating, because such jobs "require[] little, if any, social interaction." *King v. O'Malley*, No. 5:23-291-DCR, 2024 WL 1258625, at *3–4 (E.D. Ky. Mar. 25, 2024) (quoting *Bryant v. Kijakazi*, 2023 WL 4982261, at *4 (W.D. Tenn. Aug. 3, 2023)). Together these positions number 436,000 nationally. [TR at 29].

Nelson's SSR 24-3p argument does not change the result. The VE identified each job by its DOT code and testified that she drew on the DOT, among other sources. [TR at 61–62]. Nelson offers only speculation that the VE "may" have testified that these jobs involve public contact. [DE 11, Page ID# 953]. Her representative had the opportunity to explore that question at the hearing and declined to question the VE further. [TR at 63]; *see Poole v. Bisignano*, No. 5:25-139-DCR, 2025 WL 3102065, at *3 (E.D. Ky. Nov. 6, 2025). And unlike in *Kinney*, where the Commissioner argued only that the decision was otherwise supported by substantial evidence, the record here shows that the omitted limitation would not have changed the outcome. 2024 WL 2273365, at *3. "[N]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that

[4] The VE also identified the job of janitor. [TR at 29, 61]. The Commissioner concedes the DOT classifies that job as heavy work and does not rely on it. [DE 10, Page ID# 943, n.4].

the remand might lead to a different result." *King*, 2024 WL 1258625, at *4 (quoting *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005)). In the end, Nelson's second argument is without merit.

*c. <u>LCSW Cox</u>*

LCSW Jessica Cox completed a "Kentucky Determination Criteria Checklist for Serious Mental Illness (SMI)" for Nelson on June 29, 2022. [TR at 509–11]. The form asks the clinician to check the domains in which there is "[c]lear evidence of functional impairment." [TR at 510]. Ms. Cox checked "Yes" for "Societal/Role Functioning," "Interpersonal Functioning," and "Cognitive/Intellectual Functioning." [*Id.*]. She checked "No" for "Daily Living/Personal Care Functioning" and "Physical Functioning." [*Id.*]. She also indicated that Nelson's "[c]linically significant symptoms of mental illness have persisted . . . for a continuous period of at least two (2) years." [*Id.*]. The form concludes that Nelson "meets the criteria for the designation of Serious Mental Illness (SMI)." [TR at 511]. It contains no narrative and cites no clinical findings.

The ALJ did not discuss the checklist. Nelson argues that this was error because "the ALJ must articulate their consideration of all medical opinions." [DE 8, Page ID# 929 (quoting *Terhune*, 2022 WL 2910002, at *3)]. In reply, she contends that Ms. Cox's finding of impaired interpersonal functioning "supported the other medical opinions" on her social limitations. [DE 11, Page ID# 955]. The Commissioner responds that the checklist is patently deficient and that any error was harmless. [DE 10, Page ID# 946–47].

The threshold question is whether the checklist is a medical opinion at all. A medical opinion is a statement "from a medical source about what [the claimant] can still do despite [her] impairment(s)." 20 C.F.R. § 416.913(a)(2). Ms. Cox's checklist does not speak to that question. Rather, it records Nelson's diagnoses and confirms that she met the criteria for a state designation. [TR at 509–11]. The checklist does not identify any work-related ability or limitation. Nor does the checklist describe the severity of the checked "functional impairment." [TR at 510]. In short, the checklist addressed Nelson's eligibility for a state designation, not her capacity to work.

And even if the checklist were a medical opinion, the ALJ's failure to discuss it was harmless. An articulation error is harmless if "the medical opinion is patently deficient." *Lorraine R.*, 2022 WL 4232839, at *5. The Sixth Circuit has "characterized an opinion expressed in a check-box form, without any further explanation to support the treating physician's conclusions, as 'weak evidence' and ha[s] concluded that such an opinion meets the patently deficient standard." *Pruitt v. Comm'r of Soc. Sec.*, No. 22-5152, 2022 WL 4517094, at *4 (6th Cir. Sept. 28, 2022); *see also Dollinger v. Comm'r of Soc. Sec.*, No. 22-3359, 2023 WL 1777386, at *4 (6th Cir. Feb. 6, 2023) (holding that checkbox forms that "provided no objective medical findings" were "patently deficient and could not have been credited by the Commissioner"). Both cases arose under the former treating physician rule. But *Lorraine R.* applies the same harmless-error framework to the current regulations. 2022 WL 4232839, at *5. Ms. Cox's checklist is precisely the kind of form those cases describe. It consists of

checked boxes without explanation or supporting findings. [TR at 509–11]. It also predates Nelson's application by eighteen months. [*Compare* TR at 511, with TR at 15 (noting LCSW Cox's evaluation on June 29, 2022, and Nelson's application date of December 27, 2023.)].

Nelson's reply does not change this conclusion. Ms. Cox's "Yes" beside "Interpersonal Functioning" does not say whether that impairment is mild, moderate, or marked. [TR at 510]. Consequently, it adds nothing to the question the Court resolved above. The ALJ found Nelson only mildly limited in interacting with others. [TR at 20]. He explained that finding with citations to her counseling records from the same provider. [TR at 20, 26 (citing Ex. 3F)]. Nelson's fourth argument fails.

*d.* <u>*Dr. DeLawrence*</u>

Jonelle E. DeLawrence, M.D., examined Nelson on May 16, 2024. [TR at 777]. Nelson walked "with a normal posture and gait." [TR at 779]. Her muscle strength was "normal at 5/5 bilaterally in the upper and lower extremities." [TR at 780]. She was "able to walk on the heels and walk on her toes" and could "perform tandem gait and squat without difficulty." [*Id.*]. Dr. DeLawrence then offered this assessment:

> The claimant's ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying and traveling as well as pushing and pulling heavy objects may be impaired due to the claimant's history of epilepsy. It appears that her most significant restriction to performing day-to-day job activities is the unpredictability of her seizures. For this reason, she would likely require a workplace environment free of hazards such as unprotected heights or open machinery. Claimant is not currently able to drive a car due to her seizure disorder.

[TR at 780–81]. She added that, "[o]ther than the above noted restrictions, the claimant appeared to be functionally intact." [TR at 781].

The ALJ found the opinion "generally persuasive despite being somewhat vague regarding specific work-related functional limitations." [TR at 26]. He explained that, "[e]ven if some terms are undefined, the opinion is consistent with the claimant's ability to perform a range of medium work." [*Id.*]. He noted that Dr. DeLawrence's own examination supported that reading. [*Id.*]. He also noted that the state agency medical consultants found Nelson "had no exertional limitations and could do heavy work." [*Id.*]. The RFC limits Nelson to medium work with "no crawling" and "no climbing of ladders, ropes, or scaffolds." [TR at 22]. It also bars unprotected heights, workplace hazards, driving, and heavy machinery. [*Id.*].

Nelson argues that the ALJ found the opinion persuasive but failed to incorporate its postural and exertional limitations or explain why. [DE 8, Page ID# 927–28]. The Commissioner responds that the opinion was vague and equivocal and that the RFC is largely consistent with it. [DE 10, Page ID# 943–45]. Again, Nelson characterizes the Commissioner's arguments as *post hoc* rationalization. [DE 11, Page ID# 953–54].

Nelson's argument starts from a mistaken premise. She asserts that the RFC "failed to include any postural limitations." [DE 8, Page ID# 927]. But the RFC contains two: "no crawling" and "no climbing of ladders, ropes, or scaffolds." [TR at 22].

Setting that aside, Nelson's legal arguments miss the mark. Nelson again relies on *Kinney*. [DE 8, Page ID# 928]. There, the ALJ omitted a concrete limitation from a persuasive opinion without saying why. 2024 WL 2273365, at *3–4. Here, the

ALJ confronted the opinion's vagueness directly. He explained that, despite its undefined terms, the opinion was "consistent with the claimant's ability to perform a range of medium work." [TR at 26]. That is the explanation SSR 96-8p requires. *See Kinney*, 2024 WL 2273365, at *3.

In fact, Dr. DeLawrence's opinion supports the ALJ's reading. Dr. DeLawrence said only that Nelson's abilities "may be impaired." [TR at 780]. She did not say how often Nelson could bend, stoop, or squat. [TR at 780–81]. She identified Nelson's "most significant restriction" as "the unpredictability of her seizures." [TR at 780]. And the remedy she proposed was "a workplace environment free of hazards such as unprotected heights or open machinery." [TR at 781]. The RFC adopts that remedy. [TR at 22]. Her examination also undercuts any postural restriction beyond crawling. Nelson could "squat without difficulty." [TR at 780]. She "was able to perform all the range of motion exercises today without demonstrating any significant motor, neurologic or sensory deficits." [TR at 781]. Nelson identifies no authority requiring an ALJ to incorporate a limitation "merely because it was not explicitly rejected." *Acree v. Bisignano*, No. 2:25-040-DCR, 2025 WL 2551145, at *5 (E.D. Ky. Sept. 4, 2025).

The same is true of lifting. Dr. DeLawrence referred only to "pushing and pulling heavy objects." [TR at 780]. The state agency consultants found Nelson capable of heavy work. [TR at 26; *see* TR at 69, 82]. The ALJ rejected that finding and limited Nelson to medium work instead. [TR at 22, 26]. That choice accounts for Dr. DeLawrence's concern about heavy objects. On reconsideration, moreover, Dr.

Back quoted Dr. DeLawrence's opinion in full. [TR at 82]. He still rated Nelson's ability to stoop, crouch, and crawl as "Unlimited." [*Id.*]. The RFC is more restrictive than that finding. [TR at 22].

These conclusions come from the ALJ's own decision, not from counsel. [TR at 22, 26]. Because the RFC properly accounted for Dr. DeLawrence's opinion, the hypothetical that mirrored it was not deficient. [TR at 60–61]. Nelson's third argument also fails.

## IV. CONCLUSION

Nelson appeals the Commissioner's final decision denying her application for SSI. She contends that the ALJ erred at Step Three and in evaluating the medical evidence underlying the RFC. Upon consideration of the parties' respective briefs and independent review of the ALJ's decision and the record, the Court finds no merit in Nelson's arguments. Substantial evidence supports the Commissioner's decision. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("[D]ecision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision.").

For all the reasons discussed, and the Court being sufficiently advised, **IT IS ORDERED** that the final decision of the Commissioner denying the application of Nelson for SSI is **AFFIRMED**. A separate judgment will follow.

Signed this the 27th of October, 2026.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY